IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:22-CV-10-RJ

| | |
|---|---|
| ALEXANDER RAMIREZ,<br><br>    Plaintiff/Claimant,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | O R D E R |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-19, -23] pursuant to Fed. R. Civ. P. 12(c). Claimant Alexander Ramirez ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB, on October 25, 2019, alleging disability beginning December 29, 2017. (R. 15, 252–59). His claim was denied initially and upon reconsideration. (R. 15, 95–136). A hearing before the Administrative Law Judge ("ALJ") was held on June 7, 2021, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 15, 35–67). On August 13, 2021, the ALJ

issued a decision denying Claimant's request for benefits. (R. 12–33). On November 22, 2021, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

Case 7:22-cv-00010-RJ   Document 25   Filed 03/09/23   Page 2 of 17

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3).

In this case, Claimant alleges the ALJ erred by (1) failing to give proper weight and consideration to the opinions of a treating and non-treating source and did not incorporate those into the RFC, and (2) failing to include in the RFC an allowance for off-task time and absences that would preclude employment based on the VE's testimony. Pl.'s Mem. [DE-20] at 7–9.

3

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since December 29, 2017, the alleged onset date. (R. 17). Next, the ALJ determined Claimant had the following severe impairments: obesity; right shoulder impingement; degenerative disc disease lumbar and thoracic spine; degenerative joint disease left knee, status-post arthroscopy; plantar fasciitis/pes planus bilaterally; headache; kidney disease; liver disease; diabetes mellitus; bicuspid aorta with dilated root; pancreatitis (recurrent); hypertension; obstructive sleep apnea; asthma; anxiety disorder; posttraumatic stress disorder; and sleep disturbance *Id.* The ALJ also found Claimant had nonsevere impairments of gastroesophageal reflux disease and hyperlipidemia. (R. 18). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18–20). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in a mild limitation in adapting or managing oneself, and moderate limitations in understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace. (R. 19).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] requiring the following limitations:

> [T]he claimant can engage in frequent climbing of stairs and ramps, but can

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

occasionally climb a stepladder with up to four vertical feet in height. He cannot
climb higher ladders or ropes and scaffolds of any height. The claimant can
frequently balance, kneel, and crouch. He can occasionally stoop and crawl, and
frequently reach, push, and pull with the right upper extremity. He can perform
occasional overhead reaching and weight-bearing with the same supper extremity.
The claimant can have occasional exposure to environments with vibration,
atmospheric condition, moving mechanical parts, and high, exposed places. He can
tolerate exposure up to and including moderate noise. The claimant is limited to
unskilled work, which is defined as work requiring little or no judgement [sic] to
perform simple duties, and can be learned on-the-job, or in a short period of time,
usually within 30 days, and for which little specific vocational preparation and
judgment are needed. The claimant is limited to work requiring sustained
concentration and persistence for no greater than approximately two hours at a time.
He is limited to work that is not frequently performed on an assembly line, or at a
similar production pace. He can have occasional changes to the work setting, and
the manner and method of performing the assigned work that frequently provides
for two 15-minutes breaks, and one 30-minute break for each eight-hour shift work,
occurring at such times as directed by the employer. The claimant can have
occasional interactions with supervisors, coworkers and the public when
performing this assigned work.

(R. 20–25). In making this assessment, the ALJ found Claimant's statements about his limitations not entirely consistent with the medical and other evidence. (R. 21). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a general nurse. (R. 25). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 25–26).

## V. DISCUSSION

### A. Treating Source and Non-Treating Source Statements

Claimant contends that the ALJ erred because he failed to give proper weight and consideration to the residual capacity assessment from a treating source, failed to properly consider the opinion of a non-treating source, and failed to incorporate those limitations into the RFC. Pl.'s Mem. [DE-20] at 7–9. Defendant contents that the ALJ's RFC is supported by substantial evidence,

and the ALJ properly considered the treating and non-treating sources' reports and opinions. Def.'s Mem. [DE-24] at 6–13.

An individual's RFC is the capacity he possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Brown*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence" and also "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." S.S.R. 96-8p, 1996 WL 374184, at *7; *see also Clifford v. Apfel*,

227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

### *Dr. Farmer*

Specifically, Claimant argues that "in a nutshell" the ALJ "cherry-picked" Dr. Farmer's opinions that supported an unfavorable decision while excluding Dr. Farmer's opinions that supported a favorable one. Pl.'s Mem. [DE-20] at 8. Defendant responds that the ALJ accounted for all the limitations in Dr. Farmer's report. Def.'s Mem. [DE-24] at 6.

Dr. Farmer, a state psychological examiner, conducted an evaluation of Claimant on July 8, 2019. (R. 1411–15). Dr. Farmer concluded his report by stating,

> From interview, Mr. Ramirez presents as capable of understanding, retaining and following instructions. His ability to sustain attention to perform simple repetitive task is adequate. His ability to relate to others including fellow workers and supervisors may be limited due to his impatience, irritability, anxiety associated with chronic pain. His ability to tolerate the stress and pressure associated with day-to-day work activity is limited and for the same reasons. He presents as capable of handling finances in his own best interest. He is in need of continued medical treatment in addressing chronic pain and other medical issues. He is also in need of continued mental health treatment.

(R. 1415).

Claimant contends that the ALJ omitted Dr. Farmer's conclusions that (1) Claimant's "ability to relate to others including fellow workers and supervisors may be limited due to his impatience, irritability, anxiety associated with chronic pain[,]" that (2) "[h]is ability to tolerate stress and pressure associated with day-to-day work activity is limited and for the same reasons [,]" (3) "he is in need of continued medical treatment addressing chronic pain and other medical issues[,]" and (4) that "[h]e is in need of continued mental health treatment." Pl.'s Mem. [DE-20] at 2–3, 8 (citing (R. 1415)). Defendant responds that the ALJ discussed Dr. Farmer's report in his decision, citing (R. 19, 23), and accounted for these limitations in the RFC finding. Def.'s Mem.

7

[DE-24] at 6–9.

"An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)). Further, " [t]he ALJ' s failure to 'build an accurate and logical bridge from the evidence to his conclusion' constitutes reversible error." *Id.* at 868 (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)).

Here, the ALJ first noted Dr. Farmer's report when discussing the severity of any mental limitations, and discussed Claimant's ability to relate to others including fellow workers and supervisors. (R. 19) (citing (R. 1411–15)). The ALJ found Claimant had a moderate limitation in interacting with others. The ALJ noted that despite mental impairments, Claimant described his 13-year marriage as a "good marriage," and Claimant enjoyed spending time with family but did not like crowds. The ALJ further noted Claimant's indication to Dr. Farmer that he would have difficulty getting along with coworkers and supervisors because of his irritability and lack of patience. *Id.* (citing (R. 1411–15)).

The ALJ also discussed Claimant's ability to tolerate stress and pressure associated with day-to-day work in his RFC finding. The ALJ found Claimant had the RFC to perform "light work" with limitations. (R. 20). These limitations included (1) that Claimant is "limited to unskilled work, which is defined as work requiring little or no judgement [sic] to perform simple duties, and can be learned on-the-job," (2) he is "limited to work that is not frequently performed on an assembly line, or at a similar production pace," and that (3) he "can have occasional interactions with supervisors, coworkers and the public when performing this assigned work." *Id.* These restrictions address Claimant's limitations in tolerating stress and relating to others. Def.'s Mem.

8

[DE-24] at 7–8.

The ALJ's RFC discussion further noted the consultative examination of Dr. Farmer regarding Claimant's mental capacity, stating

> claimant denied a history of mental health treatment or significant emotional problems prior to serving in the U.S. Navy. Since his service, the claimant reportedly experiences panic attacks, depression, anxiety, avolition, anhedonia and anger outbursts. The claimant stated he has no history of inpatient mental health treatment, only through a therapist. The mental status examination showed the claimant was oriented. Dr. Farmer noted the claimant's computations skills were within normal limitations. He demonstrated adequate judgment, insight, and abstract thinking. Dr. Farmer diagnosed with the claimant with generalized anxiety disorder and unspecified depressive disorder (Exhibit 6F).

(R. 23). Thus, the ALJ discussed Claimant's mental health as noted by Dr. Farmer, including diagnoses of generalized anxiety disorder and unspecified depressive disorder, while also noting Farmer's observation that Claimant was oriented, had normal computation skills, had adequate judgment, insight, and abstract thinking.

The ALJ further noted Claimant's medical treatment for chronic pain and other medical issues, including mental health. The court agrees with Defendant that Dr. Farmer's statement that Claimant needed continued treatment for mental and physical conditions is not an assessment of Claimant's ability to perform work-related functions, and is not at odds with the ALJ's RFC and decision, which discussed Claimant's past and continued treatment. Def.'s Mem. [DE-24] at 8 n.5 (citing (R. 10–24, 1415)). Additionally, the ALJ discussed Claimant's back pain, (R. 21), knee pain, (R. 22), bilateral heel pain, (R. 22), acute onset abdominal pain, (R. 22), as well as treatment or any improvement.

Contrary to Claimant's assertion, the ALJ accounted for Dr. Farmer's conclusions that Claimant contends the ALJ omitted from the RFC analysis—Claimant's ability to relate to others, ability to tolerate stress and pressure of day-to-day work, and Claimant's medical treatment for

9

chronic pain and mental health, Pl.'s Mem. [DE-20] at 2–3, 8, and did not ignore evidence or Dr. Farmer's report. *See Hyde v. Saul*, No. 4:19-CV-126-D, 2020 WL 6144283, at *6 (E.D.N.C. Aug. 20, 2020) (finding the ALJ did not cherry-pick or ignore evidence regarding claimant's mental health where the ALJ found severe impairments of affective disorder and anxiety disorder, found moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself, and ultimately included several limitations in the RFC for Claimant's non-exertional impairments), *report and recommendation adopted*, 2020 WL 6140452 (E.D.N.C. Oct. 19, 2020). The ALJ did not cherry-pick facts but rather weighed the contradictory evidence in the record, as is his responsibility, and Claimant has pointed to no specific treatment record, or evidence therein, that the ALJ failed to consider, effectively asking the court to reweigh the evidence. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) ("In reviewing for substantial evidence, [the court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ.") (citation omitted). The ALJ is not required to refer to every piece of evidence in his decision. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). A review of the evidence considered and cited by the ALJ demonstrates that he did not "cherry-pick" favorable evidence and ignore unfavorable evidence, the court can follow the ALJ's reasoning, and the ALJ's decision is supported by substantial evidence in the record.

Accordingly, the court can trace the ALJ's reasoning in evaluating Dr. Farmer's report, and finds no error in the ALJ's evaluation.

### Dr. Ojebuoboh

Claimant further argues that the ALJ improperly analyzed the treating source statement

10

from Dr. Ojebuoboh because the ALJ did not acknowledge the consistency between its contents, Claimant's hearing testimony, the Department of Veterans Affairs ("VA") disability rating, and the supportive statements of Claimant's friend, and because the RFC did not include all of the limitations prescribed by Dr. Ojebuoboh. Pl.'s Mem. [DE-20] at 8–9. Defendant contends that the ALJ thoroughly assessed Dr. Ojebuoboh's opinion and properly explained why it was unpersuasive. Def.'s Mem. [DE-24] at 9–13.

Because Claimant protectively filed his application on October 25, 2019, 20 C.F.R. § 404.1520c which applies to claims filed on or after March 27, 2017, governs how the ALJ considers the medical opinions in Claimant's case. The applicable regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider the persuasiveness of medical opinions using five factors: (1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) other factors that tend to support or contradict a medical opinion." *Id.* § 404.1520c(c)(1)–(5). The most important factors are supportability and

consistency. *Id.* § 404.1520c(a). The regulations also require the ALJ to "articulate in [his] determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." *Id.* § 404.1520c(b). However, when a medical source provides multiple opinions, the ALJ may use a single analysis to evaluate all the opinions from a single source, and the ALJ is "not required to articulate how [she] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.*

Dr. Ojebuoboh, one of Claimant's treating physicians at the VA, completed a March 2021 "physical residual functional capacity statement." (R. 342–45). Dr. Ojebuoboh wrote on the fill-in-the-blank form Claimant's diagnoses and symptoms, and opined about Claimaint's physical limitations. *Id.* Dr. Ojebuoboh opined, among other things, that Claimant could sit for only 15 to 20 minutes at a time, that he needed lie down or recline about four hours during an eight-hour workday, and that he could walk and stand less than one hour in an eight-hour workday, and Claimant needed to keep his legs elevated at least 90 degrees at least 50 percent of the workday. (R. 343–44).

The ALJ noted Dr. Ojebuoboh's statement and that it indicated Claimant was limited to lifting less than five pounds rarely and that Dr. Ojebuoboh opined that Claimant must lie down 15–20 minutes before needing to sit, stand, or walk. (R. 24). The ALJ stated that, as otherwise discussed, Claimant's longitudinal examinations have typically been unremarkable, and they do not demonstrate restrictions that would be consistent with the reduced sedentary restriction and off task/absenteeism time offered in Dr. Ojebuoboh's opinion. *Id.* The ALJ found Dr. Ojebuoboh's statement unpersuasive because (1) there was a lack of consistency between the opinion statement and the longitudinal record, and (2) the statement makes no effort to build a logical bridge between

12

the various restrictions and the documented record, including the provider's own treatment notes. *Id.*

The ALJ stated that March 2019 pain management notes showed complaints of persistent back pain, radiating to Claimant's legs. However, as Defendant notes, the ALJ stated that imaging revealed no significant abnormalities in Claimant's lumbar spine, with only mild L5-S1 discogenic degenerative changes, without significant spinal canal or neural foraminal stenosis. Def.'s Mem. [DE-24] at 10 (citing (R. 21, 2550)).

The ALJ noted that Claimant underwent surgical repair for a meniscus tear in February 2021, a month prior to Dr. Ojebuoboh's opinion, that post-operatively Claimant was doing well, with occasional stiffness and tenderness, that objective findings showed healing incisions, full range of motion, and negative Homans, and that Claimant was released to perform activities as he felt comfortable. (R. 22) (citing (R. 4294)).

The ALJ also noted that in July 2018, Claimant received outpatient treatment for bilateral heel pain with prolonged standing and walking. (R. 22). Claimant had been previously treated with orthotics, stretching exercises, and anti-inflammatories, with no decrease in foot pain. *Id.* Examination of Claimant's feet showed pain with palpation to the plantar medial aspect, and there was no warmth or tenderness. *Id.* The ALJ stated that, thus, Dr. Carthon diagnosed Claimant with plantar fascial fibromatosis, and recommended non-surgical intervention with bracing and physical therapy. *Id.* (citing (R. 555)). Dr. Carthon's notes mention that Claimant noted significant decrease in foot pain since his previous visit, and also that Claimant was then instructed to continue activity to tolerance. (R. 554–55). The ALJ further noted that a June 2020 diabetic foot examination showed completely normal findings. (R. 22) (citing (R. 3003)). The court can follow the ALJ's reasoning that Dr. Ojebuoboh's opinion and the included limitations were not consistent with the

13

longitudinal record and examinations, which the ALJ accurately characterized as typically unremarkable.

Additionally, the ALJ concluded that Dr. Ojebuoboh's statement, (R. 342–45), was unpersuasive because it made no effort to build a logical bridge between the various restrictions and the documented record, including the provider's own treatment notes. (R. 24). Defendant points to an April 2020 visit with Dr. Ojebuoboh, which recorded the only present illness as diabetes, (R. 2872), and to notes from the year prior, in which Dr. Ojebuoboh only listed mild to moderate depression and diabetes as present illnesses, with no current physical impairments, (R. 2872, 2879, 2890). In May 2019, Dr. Ojebuoboh noted that Claimant complained of pain of the sole of the right foot (R. 2897), and in February 2019, Dr. Ojebuoboh recorded the present illness of radiculopatry, with chronic pain syndrome from bulging disc of the lumbar spine, (R. 2901). Also, in June 2020, Dr. Ojebuoboh listed left knee as a present illness, along with depression and diabetes and general endocrinology, stating, "He has left knee pain ,the daughter fell on the knee and he has been having pain in the knee, plain x-ray will probably be non-diagnostic, this is most likely ligament injury, MRI is very sensitive [sic] in detecting ligament injury." (R. 3002). However, as Defendant states, most physical examinations performed by Dr. Ojebuoboh appear normal and Claimant denied musculoskeletal complaints entirely. Def.'s Mem. [DE-24] at 11–12 (citing (R. 2880, 2884, 2891, 3003)). For example, notes from April 2020 state, "[p]atient denies joint stiffness, joint pain," (R. 2880), and when asked if Claimant exercises, the treatment note indicated in the affirmative. (R. 2879).

Claimant only makes conclusory allegations that Dr. Ojebuoboh's statement was "consistent" with the hearing testimony, the VA rating, and the supportive statement from Claimant's friend (Mr. Cooper), (R. 340). Pl.'s Mem. [DE-20] at 8–9. Claimant does not spell out

14

specifically in what way these records were consistent with Dr. Ojebuoboh's statement or in what way they were inconsistent with the ALJ's RFC. Furthermore, the ALJ noted and considered this evidence. (R. 21, 24–25).

The ALJ stated that Claimant "is a 36-year-old male with a high school education, with some college courses" and that Claimant "alleged disability due to diabetes mellitus, pancreatitis, asthma, sleep apnea, anxiety, bicuspid aortic root valve dilation, back pain, and knee pain." (R. 21). The ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* The ALJ discussed and noted multiple treatment records in support, as noted above regarding the ALJ's analysis of the consistency between Dr. Ojebuoboh's opinion and the longitudinal record. (R. 21–23). The ALJ also acknowledged and discussed Claimant's VA Rating. (R. 24). The ALJ stated that while Claimant had been assigned a rate of 100 percent from the VA, the rating was not persuasive. The ALJ noted and considered the impairments in the longitudinal record and that the RFC is derived from the medical evidence of record. *Id.* (citing (R. 1371)). Finally, the ALJ also discussed the third-party function report from Claimant's spouse, and the personal statements from Claimant's friends, Ashely and Jordan Cooper. (R. 24–25). The supportive statement of Mr. Cooper, (R. 340), the ALJ stated, was given limited persuasiveness for the same reasons given for Claimant's subjective statements. *Id.*

Claimant has not pointed with any particularity to how Dr. Ojebuoboh's statement was consistent with the Claimant's and his friend's statements and with the VA rating, and effectively asks the court to reweigh the evidence. *See Hancock*, 667 F.3d at 472 ("In reviewing for substantial evidence, [the court does] not undertake to reweigh conflicting evidence, make credibility

15

determinations, or substitute our judgment for that of the ALJ.") (citation omitted).

The ALJ's explanation of the records illustrates the ALJ's reasonable conclusions that Dr. Ojebuoboh's limitations regarding sitting, standing, and walking were not consistent with the record as a whole, Dr. Ojebuoboh's opinion did not build a logical bridge in support, and thus the opinion was unpersuasive. Accordingly, the court can trace the ALJ's reasoning in evaluating the persuasiveness of Dr. Ojebuoboh's opinion, and finds no error in the ALJ's evaluation. *See Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) ("An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has failed to give a sufficient reason for the weight afforded a particular opinion.") (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)).

### B.     Off-Task Time and Absences

Claimant contends that the ALJ erred because he failed to include in the RFC an allowance for off-task time and absences that would have, by the VE's testimony, precluded employment. Pl.'s Mem. [DE-20] at 7–9. Specifically, Claimant argues that the ALJ did not address how Claimant could attend appointments he needs to treat his impairments while maintaining employment, in light of the VE's testimony regarding employer tolerances for off-task time and absences. *Id.* at 9. Defendant argues that Claimant did not meet his burden to demonstrate a need for a limitation to account for doctor's appointments. Def.'s Mem. [DE-24] at 13–15.

Claimant does not cite to particular evidence in the record regarding a frequent need for medical appointments and does not cite to any authority for the proposition that such would preclude work. *See Exum v. Saul*, No. 5:19-CV-39-D, 2019 WL 5208851, at *10 (E.D.N.C. Sept. 13, 2019) ("Argument is not evidence, and the ALJ determined that the medical evidence and the physician's opinion evidence did not support the alleged severity of Claimant's mental

16

impairments such that he would miss more than one day of work per month."), *report and recommendation adopted*, 2019 WL 5206249 (E.D.N.C. Oct. 15, 2019); *Duncan v. Kijakazi*, No. 7:21-CV-14-RJ, 2022 WL 4125144, at *9 (E.D.N.C. Sept. 9, 2022) (finding the ALJ appropriately relied on VE testimony where Claimant generally argued that the VE's testimony regarding absenteeism "is simply not credible," and Claimant provided no authority for that proposition).

Further, while the ALJ did not discuss absenteeism in his decision, he did not need to do so since he did not include that restriction in the RFC. *See Baker v. Colvin,* No. 3:13-CV-20376, 2015 WL 5687544, at *9 (S.D.W. Va. Sept. 8, 2015), *report and recommendation adopted*, 2015 WL 5698511 (S.D.W. Va. Sept. 28, 2015) ("The RFC, and by extension, any hypothetical question relied upon, need only reflect those limitations that are credibly established by the record.") (citing *Russell v. Barnhart*, 58 Fed. Appx. 25, 30 (4th Cir. Feb. 7, 2003)).

Accordingly, the ALJ did not err regarding any alleged need for off-task time or absences.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-19] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-23] is ALLOWED, and Defendant's final decision is affirmed.

So ordered, the 9th day of March 2023.

Robert B. Jones, Jr.
United States Magistrate Judge